**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**UNITED STATES OF AMERICA**

v.                                                    **Case No. 2:26-cr-24-SPC-DNF**

**JOSEPH DEMEO**
_____/

## MOTION TO DISMISS INDICTMENT

COMES NOW, Joseph Demeo, by and through counsel, and pursuant to Mr. Demeo's rights to proceed to trial on an accusatory instrument preserving his Fifth and Sixth Amendment rights to trial as indicted by his Grand Jury, to notice and to an ability to plead double jeopardy, respectfully moves the Court for an Order of dismissal for failure to state an offense as required by Fed. R. Crim. Pro. 12(b)(3)(B)(v) and, as such, for a lack of specificity as required by Fed. R. Crim. Pro. 12(b)(3)(B)(iii). Further, and for the same reasons, the indictment at bar must be dismissed as it is unconstitutionally vague as applied. In support of this motion, Mr. Demeo states as follows:

1.       Because 18 U.S.C. § 875(c) facially criminalizes speech based on hostility toward the communication expressed, § 875(c) is a content-based, statutory restriction on speech. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 386 (1992).[1]

---

[1] *R.A.V.,* 505 U.S. at 388 ("threats of violence are outside the First Amendment").

Turning to Part A of this motion, accepting as true the nineteen communications as charged on the face of the instant accusatory instrument for purposes of this motion, the indictment at bar must be dismissed as a matter of law because none of these alleged communications could be deemed a true threat by a reasonable juror. As such, the indictment at bar fails to state an offense, fails to provide notice, fails to safeguard Mr. Demeo's right against double jeopardy and amounts to an unconstitutional application of 18 U.S.C. § 875(c). *See* Footnote 2, *infra,* and Paragraph 4, *infra*. As a result, and as presented in Part B of this motion, what is alleged in the indictment constitutes protected speech.

2.      The indictment at bar (Doc. 17) charges Mr. Demeo with nineteen counts of transmission of a "true threat"[2] to "*the person of another* with the intent to

---

[2] 18 U.S.C. § 875(c) criminalizes "threat." It does not modify "threat" with "true." The indictment at bar does. While the definition of "threat" and the definition of the extra-statutory "true threat" are not co-extensive, *United States v. Stock,* 728 F.3d 287, 294 (3rd Cir. 2013), § 875(c) criminalizes only true threats, *United States v. Sheikh,* 164 F.4th 629, 633 (7th Cir. 2026), as any criminal statute criminalizing a threat must criminalize only a true threat as a true threat -- a subset of all threats -- is unprotected speech. *Stock,* 728 F.3d at 293-94 (*citing Watts v. United States,* 394 U.S. 705, 707 (1969); *Id.* at 295 (*citing R.A.V.,* 505 U.S. at 388). While the question of whether a communication is a threat or a true threat is usually a jury question, in clear cases, that question is resolved as a matter of law. *Id.* at 298 (citing cases). In those clear cases, the Court determines the indictment fails to set forth all of the elements necessary to constitute the § 875(c) offense and, therefore, no reasonable jury could find that communication constitutes a true threat. *Id.* Indeed, where the defendant moves to dismiss under Fed. R. Crim. Pro. 12, the propriety of granting that motion "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Korn,* 557 F.2d 1089, 1090 (5th Cir. 1977) (*quoting United States v. Miller,* 491 F.2d 638, 647 (5th Cir. 1974)).

issue a threat, and knowing and in reckless disregard of the fact that such communication would be viewed as a threat," in contravention of 18 U.S.C. § 875 (c). (emphasis added)  Taking the instant allegation on its face, as all parties must,[3] and turning to the September 2025 version of the Eleventh Circuit Pattern Jury Instruction O30.3, for a jury to convict under § 875(c), the jury must find the defendant knowingly sent a message in interstate or foreign commerce containing a true threat to kidnap any person or injure the person of another.  Continuing with the face of the instant allegations, the indictment alleges Mr. Demeo transmitted communications on YouTube on five different days in 2025 to "the person of another" as follows:

I.    "Threat to kill and eradicate Muslims off the face of the earth…" on December 15, 2025, (Count 1) and, essentially as well, on December 27, 2025 (Count 16).

II.    "Threat to slaughter, eradicate, and kill every Muslim man, woman, and child…" on December 21, 2025, (count 2) and, essentially as well, on December 25, 2025, (Count 3), another instance on December 25, 2025, (Count 7) and on December 26, 2025. (Count 11).

III.    "Threat to kill and genocide Muslims in their homes…" on December 25, 2025.  (Count 4).

---

[3] *See* Paragraph 4, *infra.*

IV.  "Threat to kill and genocide all Muslims…" on December 25, 2025, (count 5) and, essentially as well, at another instance on December 25, 2025, (Count 6), and on December 26, 2025, (Count 9) and December 27, 2025 (Count 19).

V.  "Threat to kidnap and kill entire towns of Muslim men, women and children by loading them on busses to a location where they will be shot in the head and sent through a wood chipper…" on December 26, 2025, (Count 12), and, essentially as well, on December 27, 2025.  (Count 18).

VI.  "Threat to genocide and kill every Muslim in America…" on December 26, 2025, (Count 13) and, essentially as well, on December 27, 2025, (Count 14) and at another instance on December 27, 2025.  (Count 17).

VII.  "Threat to kill immigrants, Muslims, 'American blacks' and 'people from India…" on December 26, 2025.  (Count 8).

VIII.  "Threat to slaughter and genocide Muslims and politicians…" (Count 10).

3.  Any indictment that fails to allege the essential elements of the crime charged is defective under the Fifth Amendment (the right to proceed, if at all, as charged by a Grand Jury) and the Sixth Amendment (notice and jeopardy).  *Russell v. United States,* 369 U.S. 749, 760-61 (1962).  As to Fifth Amendment protections, the Indictment Clause "requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with

facts other than those considered by the grand jury." *United States v. Silverman,* 430 F.2d 106, 110 (2nd Cir. 1970).[4]  As to one Sixth Amendment protection, the defendant's right to be informed of the nature and cause of accusation attaches when the government has committed itself to prosecution.[5]  As to another Sixth Amendment protection, the indictment must allege facts sufficient to plead former jeopardy in a subsequent prosecution. *Russell,* 369 U.S. at 771 (*relying on Stirone v. United States,* 361 U.S. 212, 218 (1960)).  As developed further in the following paragraph -- and as to all constitutional protections afforded the defendant in any federal prosecution -- every indictment shall be judicially assessed as it has been actually drawn as opposed to as it might have been drawn. *Sanabria v. United States,* 437 U.S. 54, 65-66 (1978).

4.      As a motion to dismiss challenges the sufficiency of the indictment to charge an offense, the validity of the indictment is "determined from the words of the indictment and the Court is not free to consider evidence not appearing on the face of the indictment." *United States v. Winer,* 323 F.Supp. 604, 605 (E.D.Pa. 1971)

---

[4] "The policy underlying the requirement of specificity in the indictment is similar to that which forbids the amendment of an indictment without resubmission to a grand jury. It is to prevent the usurpation of power by the court and prosecutor in allowing a defendant to be convicted 'on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.' *Russell v. United States,* 369 U.S. 749, 770 (1962)." *Silverman,* 430 F.2d at 110.

[5] *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir. 1987); *Grimsley v. United States,* 50 F.2d 509, 510 (5th Cir. 1931) (*relying on Evans v. United States,* 153 U.S. 584 (1894); *United States v. Hess,* 124 U.S. 483 (1888); *United States v. Cruikshank,* 92 U.S. 542 (1875)).

(*citing United States v. Sampson,* 371 U.S. 75, 78-79 (1962); *see United States v. Sunia,* 643 F.Supp.2d 51, 60 (D.D.C. 2009); *see also United States v. Salman,* 378 F.3d 1266, 1267-68 (11th Cir. 2004) (reviewing Court is confined to face of indictment). "The sufficiency of an indictment is determined from its face." *United States v. Critzer,* 951 F.2d 306, 306-07 (11th Cir. 1992). Where, as here, the defendant claims the indictment fails to state an offense under Fed. R. Crim. Pro. 12(b)(3)(B)(v), the operative question is "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Bowdoin,* 770 F.Supp.2d 142, 146 (D.D.C. 2011) (*citing Sampson, supra*); *see United States v. Stock,* 728 F.3d 287, 292 (3rd Cir. 2013) (where specific facts in indictment fall beyond the scope of the relevant criminal statute, the indictment fails to state an offense). As this Court held seven years ago, on a motion to dismiss under Fed. R. Crim. Pro. 12(b)(3)(B)(v), the Court shall assume "the allegations in the Information are true and will determine whether they implicate [the defendant] for the charged crimes as a matter of law." *United States v. Turtle,* 365 F.Supp.3d 1242, 1244 (M.D. Fla. 2019).

5. An indictment lacks specificity where it fails to notify the defendant of the facts on which the government bases the indictment. *United States v. Ballestas*, 795 F.3d 138, 148-49 (D.C.Cir. 2015); *United States v. Safavian*, 429 F.Supp.2d 156, 158 (D.D.C. 2006) (*relying on Hamling v. United States*, 418 U.S. 87, 117

6

(1974)).

6.    Because of the manner in which the indictment at bar fails to state an offense, it also lacks specificity and must be dismissed under Fed. R. Crim. Pro. 12(b)(3)(B)(iii). *United States v. Warnagiris,* 699 F.Supp.3d 31, 39 (D.D.C. 2023) (*citing Hamling v. United States,* 418 U.S. 87, 117-18 (1974); *Safavian,* 429 F.Supp.2d at 158).

**A.    As the indictment fails to state an offense in this case, it also lacks specificity.  Either of these grounds requires dismissal under Fed. R. Crim. Pro. 12(b)(3)(B).**

As to *actus reus* in an § 875(c) prosecution, "[t]he existence of a threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Counterman v. Colorado,* 600 U.S. 66, 74 (2023). As such, "true threats" are serious expressions a speaker conveys to communicate his intent to commit an act of unlawful violence. *Id.* (*citing Virginia v. Black*, 538 U.S. 343, 359 (2003).  "True threats subject individuals to 'fear of violence' and to the many kinds of 'disruption that fear engenders.'" *Id.* (*citing Black,* 538 U.S. at 360).  Returning to Footnote 1, *supra*, "[t]he 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a ***real*** possibility that violence will follow." *Id.*  (emphasis added).  It is in this way that Courts have quantified a true threat as a coalescence of speech and conduct. *United States v. Francis,* 164 F.3d 120, 123 (2nd Cir. 1999) (true threat "is

so intertwined with violent action that it has essentially become conduct rather than speech"); *see United States v. Viefhaus,* 168 F.3d 392, 396 (10th Cir. 1999) (18 U.S.C. § 844(e) case holding "[t]he question is whether those who hear or read the threat reasonably consider that an actual threat has been made").

Picking up on the *Counterman actus reus*, although § 875(c) elementally references "the person of another," § 875(c) criminalizes true threats against a group of individuals as well as against a particular individual. *United States v. Fluery,* 20 F.4th 1353, 1365 (11th Cir. 2021) (*citing Black,* 538 U.S. 359).[6] Here, and unlike the specific victim-targeting of *Fluery,* the government alleges video postings on YouTube necessarily transmitted coactively to no one and to everyone[7] necessarily constituted a true threat to kill all immigrants, all Muslims, all American Blacks and

---

[6] Taking into consideration, on the one hand, case authority holding that "the person of another" may be person**s** of another, on the other hand, the size of the group of person**s** rationally and irretrievably modulates the objective contours of that communication to a reasonable person. *See* Footnotes 7 & 8, *infra.*

[7] The indictment at bar alleges Mr. Demeo transmitted statements on YouTube which "is a video sharing service that allows users to watch videos posted by other users and upload videos of their own." *McQueen v. Baskin,* 377 So.3d 170, 172 n. 3 (Fla. 2nd DCA 2023). While YouTube is not a traditional public forum insofar as YouTube is a private entity that can abridge speech protected by the First Amendment, posting of videos on YouTube nonetheless amounts to an exercise of free speech. *Requa v. Kent School Dist. No. 415,* 492 F.Supp.2d 1272, 1279 (W.D. Wash. 2007); *see Wells v. Rice,* 692 F.Supp.3d 735, 742 (E.D. Kent. 2023) (facebook). Additionally, unlike the minerun of § 875(c) complainants who passively and involuntarily receive noxious emails, direct messages, voicemails, etc., YouTube viewers must (i) activate the posting at will and then can (ii) terminate the posting at will.

all people of India notwithstanding the absence of any statement as to when or where these violent attacks on these enormous and immeasurably distributed groups[8] shall occur.  The allegations at bar are bereft of context or circumstances, to include not only time and place but also any indication that the posting individual has the means to act on his entirely anachronistic statements.  *See, e.g., United States v. C.S.,* 968 F.3d 237, 245 (3rd Cir. 2020).  It is respectfully submitted that the universe of the "persons of another" is dwarfed only by the limitless number of places where these killings could occur.  Further there is not even a suggestion of imminence; that is, the allegations at bar contain not a hint as to **_when_** the violent acts shall be visited upon any of the tens of millions of people in countless possible locations.  Relying on *United States v. Kelner,* 534 F.2d 1020 (2nd Cir. 1976) *cert. denied* 429 U.S. 1022 (1976), the Court wrote in *United States v. Baker,* 890 F.Supp. 1375, 1385-86 (E.D. Mich. 1995):

---

[8] Assuming *arguendo* and for the sake of this motion that these unconditioned violent acts occurring at an unidentified time and in an unidentified place would at least occur within the United States, there are over 46 million blacks residing in the United States as of July 1, 2025 (*see* census.gov/quickfacts/fact/table/US/RHI225224, *last visited February 24, 2026*) and between three and 4.5 million Muslims residing in the United States (*see* justiceforall.org/resources/reports/American-muslims-2025-a-brief-profile/, *last visited February 24, 2026)*.  Using the INA definition of "immigrants" at 8 U.S.C. § 1101(15), undersigned counsel is uncertain where to begin an estimation of the number of "immigrants" in the United States.  Taking a more simplistic approach, and for purposes of this motion, according to the United States Census dataset relied on previously in this footnote, 14.1 percent of the total July 2025 population of 341,784,857 was foreign born; or, 48 million residents.  Finally, "all people of India" generates the largest number of all: 1.47 billion (*see* worldometers/world-population/india-population/, *last visited February 24, 2026*).

the constitutional standard enunciated in *Kelner* requires, at the very least, that a statement charged under § 875(c) contain some language construable as a serious expression of an intent imminently to carry out some injurious act. The language of the statement must be considered as it would be interpreted by the foreseeable recipients of the communication containing it. Statements expressing musings, considerations of what it would be like to kidnap or injure someone, or desires to kidnap or injure someone, however unsavory, are not constitutionally actionable under § 875 (c) absent some expression of an intent to commit the injury or kidnapping. [footnote deleted].  In addition, while the statement need not identify a specific individual as its target, it must be sufficiently specific as to its potential target or targets to render the statement more than hypothetical.

Much more recently in a civil action, *Damsky v. Summerlin,* – F.Supp.3d –, 2025 WL 3282519, * 7  (N.D. Fla. Nov. 25, 2025), the Court wrote:

To be sure, those reading Damsky's words may be justifiably fearful. Some may assume that anyone uttering such commentary is more likely to act violently than someone who does not.  (cite deleted).  But that is not the test. The test is whether Damsky's posts constituted a 'serious expression' that he *meant* "to commit an act of unlawful violence." *Counterman,* 600 U.S. at 74. Many would not love the idea of attending school with someone who burns crosses, *cf. Black*, 538 U.S. at 366-67,  marches in Nazi parades, *cf. Nat'l Socialist Party of Am, v. Skokie,* 432 U.S. 43, 44 (1977), or engages in countless other forms of offensive expression. But 'the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.'  *Snyder,* 562 U.S. at 458 (*quoting Texas v. Johnson*, 491 U.S. 397, 414 (1989)).

Because *Black,* 538 U.S. at 359  holds a "true threat" is a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence[,]" for any ordinary and reasonable Muslim, or American

10

black, or immigrant or person of India to have, first, actively elected to view a communication alleged in the indictment not transmitted directly to that viewer and to have, second, interpreted that actively-received communication as a true threat, that ordinary and reasonable recipient would necessarily have to understand the communication as a serious intent to harm that recipient at any place and at any time. *See United States v. Khorrami,* 895 F.2d 1186, 1192 (7th Cir. 1990); *United States v. Li,* 537 F.Supp.2d 431, 434-35 (N.D.N.Y. 2008) (citing cases); *United States v. Bozeman,* 495 F.2d 508, 510 (5th Cir. 1974) (context of communication deemed true threat must have reasonable tendency to create apprehension that its originator will act according to its tenor).[9]    Because no reasonable person viewing any communication alleged in the indictment at bar not directly sent to that person in the first place as a serious expression of intent to harm that person at an unknown time

---

[9] The tenor of the allegations inventoried at Items I through VIII of Paragraph 2, *supra,* is protected noxious ranting posted for everyone and no one to choose to view and containing no information as to where or when violence upon numerically enormous groups of people will occur. *See* Part B of this motion, *infra.* As such, as a matter of law, the allegations at bar were not made under circumstances that would place a reasonable person who actively exposed himself or herself to the alleged communication in fear. *See* Eleventh Circuit Pattern Jury Instruction O30.3, 18 U.S.C. § 875(c) (Sept. 2025); *see also United States v. Elonis,* 841 F.3d 589, 596 (3rd Cir. 2016) ("the defendant transmitted a communication that a *reasonable* person would view as a threat") (emphasis added). In an § 875(c) prosecution that survives a motion to dismiss, the § 875(c) jury shall "consider the context and circumstances in which a communication was made to determine whether a reasonable person would consider the communication to be *a serious expression* of an intent to inflict bodily injury on an individual." *Id.* at 597. This objective determination "shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor." *Id.* at 596-97.

and at an unknown place, the statements alleged in the indictment, as a matter of law, do not constitute true threats. And if there is no question that the speech at bar is First-Amendment protected, the charge is subject to dismissal as a matter of law. *Viefhaus,* 168 F.3d at 397 (*citing United States v. Malik,* 16 F.3d 45, 51 (2nd Cir. 1994).

**B.     In light of Part A, the indictment unconstitutionally criminalizes protected speech and is unconstitutionally vague as applied, violating Mr. Demeo's Fifth Amendment right to due process**

If the speech the government alleges in Doc. 17 of this matter is not a true threat, then it is protected speech unless it constitutes an incitement to unlawful conduct. As the Second Circuit stated less than two years ago:

> [T]he First Amendment protects even intemperate speech, and words that take a threatening form may simply reflect heated rhetoric that, in context, would not reasonably engender fear. Thus, to be consistent with the First Amendment, a threat crime requires an objective element (the *actus reus*) – the threatening words must constitute a *true* threat. (emphasis in original).

*United States v. Garnes,* 102 F.4th 628, 637 (2nd Cir. 2024).

Our free speech guarantee prohibits the proscription of advocacy for the use of force or the violation of law in a public forum unless such advocacy (i) is directed to inciting or producing imminent lawless action and (ii) is likely to incite or produce such action. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (provocative and challenging speech striking at heart

of prejudices and preconceptions protected "unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance and unrest"). "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002); *Kunz v. New York*, 340 U.S. 290, 294-95, 296 (1951) (prior restraint of public statements that included a reference to World War II Jews as "[a]ll the garbage that didn't believe in Christ should have been burnt in the incinerators[,]" violates free speech); *see Synder v. Phelps*, 562 U.S. 443, 454, 458, 460-61 (2011) ("speech cannot be restricted simply because it is upsetting or arouses contempt"). As Mr. Demeo is not charged with an incitement to unlawful conduct offense – *e.g.*, 18 U.S.C. § 2101(a)(1); 18 U.S.C. 2383 – and as his alleged speech is not a true threat, it is protected under *Brandenburg*. *Viefhaus*, 168 F.3d at 397. Further, but for the same reasons, because the allegations at bar do not put Mr. Demeo on notice that his alleged speech was unlawful under § 875(c), the indictment at bar affronts due process as it is unconstitutionally vague as applied. *United States v. Duran,* 596 F.3d 1283, 1290 (11th Cir. 2010).[10]

---

[10] A criminal statute is vague as applied where it is applied absent sufficient definiteness to inform a person of ordinary intelligence what actions are prescribed inviting – as here – an arbitrary and discriminatory enforcement of that criminal statute. *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).

**PLEASE TAKE NOTICE** that a defendant who objects to an indictment before trial is entitled to a more exacting review than a defendant who postpones his objections until after trial. *United States v. Goodwin,* 141 F.3d 394, 401 (2nd Cir. 1997); *see also United States v. Prentiss,* 206 F.3d 960, 976 (10th Cir. 2000).

**PLEASE TAKE FURTHER NOTICE** that a challenge to the indictment claiming the indictment lacks specificity must be filed before trial. *United States v. Varner*, 441 F.2d 386 (5th Cir. 1971) *cert. denied* 404 U.S. 825 (1971)

WHEREFORE, premises considered, Mr. Demeo seeks an Order of Dismissal pursuant to Fed. R. Crim. Pro. 12(b)(3)(B)(v), and Fed. R. Crim. Pro. 12(b)(3)(B)(iii), and his Fifth Amendment right to an accusation not vague as applied and any other relief this Court deems fit and proper.

Respectfully submitted,

Charles L. Pritchard, Jr.
Federal Public Defender
Middle District of Florida

/s/ James Lappan
James Lappan
Florida Bar No. 0160792
Assistant Federal Defender
2075 West First Street, Suite 300
Fort Myers, Florida 33901
Telephone: 239-334-0397
Fax: 239-334-4109

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of March 2026, a true copy of the foregoing was electronically filed and served electronically to Matthew Redavid, Office of the United States Attorney, 2110 First Street, Fort Myers, Florida.

/s/ James Lappan
James Lappan
Assistant Federal Defender