UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 2:26-CR-24-SPC-DNF

JOSEPH ERIC DEMEO

**UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The United States, appearing by and through undersigned counsel, hereby files the following Response to the Defendant's Motion to Dismiss Indictment, see Doc. 29. In sum, the Defendant argues the indictment fails because it does not state an offense and lacks specificity under Federal Rules of Criminal Procedure 12(b)(3)(B) and is unconstitutionally vague as applied to him. With respect to the former, as described in further detail below, the United States argues that because the indictment, Doc. 17, tracks the statutory language of 18 U.S.C. § 875(C), provides the approximate date and location where the Defendant committed the alleged offenses, enables the Defendant to rely upon a judgment under the indictment as a bar against double jeopardy, specifies the particular forum (YouTube) that the Defendant made the communication, and includes the unique Comment ID associated with each true threat alleged, along with a generic description of the true threat alleged, it goes above and beyond what binding case law has interpreted is required to satisfy Federal Rule of Criminal Procedure 12(b)(3)(B)(v) and 12(b)(3)(B)(iii), and therefore, the Court should deny the Defendant's motion on that ground. And with respect to the

vagueness as-applied challenge, the United States responds that there is a sufficient amount of information included in the indictment to place the Defendant on notice of the allegations and how such communications are unlawful because of each communications' expression of a "true threat" in the form of an intent to kidnap or kill certain segments of the population, which is forbidden by 18 U.S.C. § 875(c). Accordingly, the Court should deny the Defendant's motion.

## RELEVANT FACTS

On December 29, 2025, the FBI received a voluntary emergency disclosure of information from Google for a YouTube user that posted multiple comments on multiple YouTube videos threatening harm to Muslims, immigrants, "American blacks", and "people from India" in the United States. As part of the disclosure, Google provided the subscriber information associated with the aforementioned YouTube user, which identified the user as the Defendant, Joseph Eric Demeo, of Naples, Florida, along with twenty-two (22) separate comments made by the Defendant between December 15 and December 27, 2025. A grand jury subsequently charged the Defendant in an indictment with nineteen (19) counts of Interstate Communication of Threat to Injure and Kidnap in violation of Title 18, United States Code, Section 875(c), corresponding to nineteen (19) separate comments as identified by date, unique Comment ID, and a general description of the true threat alleged.

The Defendant now files a Motion to Dismiss Indictment, alleging the indictment (1) fails to state an offense in violation of Federal Rule of Criminal Procedure 12(b)(3)(B)(v), (2) lacks specificity in violation of Federal Rule of Criminal

Procedure 12(b)(3)(B)(iii), and (3) should be dismissed as unconstitutionally vague as applied "because the allegations do not put [the Defendant] on notice that his alleged speech was unlawful". See Doc. 29 at 1, 12-13.

## I.    STANDARD

A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or for constitutional reasons. See United States v. Kaley, 677 F.3d 1316, 1325 (11th Cir. 2012); Fed. R. Crim. P. 12(b). Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is defective and may be dismissed before trial if it fails to state an offense, Fed. R. Crim. P. 12(b)(3)(B)(v), or lacks specificity, Fed. R. Crim. P. 12(b)(3)(B)(iii).

Furthermore, the First Amendment to the Constitution prohibits Congress from creating laws which abridge the freedom of speech. U.S. Const. Amend I. The Supreme Court, however, recognized certain "well defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942). Therefore, protections of the First Amendment are not absolute, and speech that constitutes a "true threat" may be criminalized. Watts v. United States, 394 U.S. 705, 707-08 (1969).

Whether a particular communication is protected speech is a question of law. See United States v. Popa, 187 F.3d 672, 674 (D.C. Cir. 1999). As such, it is not within the province of a jury to consider whether any violation occurred regarding a

3

defendant's First Amendment rights in a prosecution under 18 U.S.C. § 875(c). See generally United States v. Khan, 1:15-cr-286, ECF Doc. 238 at 21 (N.D. Ill. 2015) (jury charge instruction); see also United States v. Daniel Alan Baker, 4:21-cr-10, ECF Doc. 72 at 6 (S.D. Fla. 2021) (jury charge instruction). Instead, a court may – "if there is no question that a defendant's speech is protected by the First Amendment" – dismiss an indictment as a matter of law. United States v. Viefhaus, 168 F.3d 393, 397 (10th Cir. 1999) (citing United States v. Malik, 16 F.3d 45, 51 (2d Cir. 1994)). Otherwise, "whether a communication constitutes a 'true threat' is a matter to be decided by the trier of fact." United States v. Hussaini, 2022 WL 138474, at *5 (S.D. Fla. Jan. 14, 2022); United States v. Kosma, 951 F.2d 549, 555 (3d Cir. 1991); United States v. White, 670 F.3d 498, 512 (4th Cir. 2012); United States v. Parr, 545 F.3d 491, 497 (7th Cir. 2008); United States v. Floyd, 458 F.3d 844, 848-49 (8th Cir. 2006); United States v. Viefhaus, 168 F.3d 392, 397 (10th Cir. 1999); United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994). Within the 18 U.S.C. § 875(c) context, for an indictment to survive, the United States must allege a communication that a reasonable jury could find is a true threat. United States v. Joseph Giancola, 2:25-cr-00238-KCD-NPM, ECF Doc. 36 at 5 (M.D. Fla. Feb. 15, 2026).

On a motion to dismiss the indictment, the allegations are presumed true and are viewed in the light most favorable to the government. See, e.g., United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987). "[A] district court is limited to reviewing the facts of the indictment, and more specifically, the language used to charge the crimes." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). An

indictment is sufficient "if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998). If the indictment tracks the statute's language and states facts and circumstances that give notice of the offense, it passes muster. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). Simply put, "[t]he standard for whether an indictment sufficiently alleges a crime is not demanding. An indictment tracking the statutory language and stating approximately the time and place of an alleged crime is sufficient." United States v. Moore, 954 F.3d 1322, 1332 (11th Cir. 2020). An indictment does not have to "allege in detail the factual proof that will be relied upon to support the charges." United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).[1]

## II.    DISCUSSION

The Defendant is charged with nineteen (19) counts of Interstate Communications of Threat to Injure and Kidnap in violation of Title 18, United States Code, Section 875(c). According to the statute, "[w]however transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c). To obtain a conviction under 18 U.S.C. § 875(c), the United States must prove beyond a reasonable doubt:

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(1)     The Defendant knowingly sent a message in interstate or foreign commerce[2] containing a true threat to kidnap any person or injure the person of another; and,

(2)     The Defendant sent the message with the intent to communicate a true threat, or with knowledge – or in reckless disregard[3] – that it would be viewed as a true threat.

Offense Instruction 30.3, Eleventh Circuit Pattern Jury Instructions (as modified by case law).

A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would place a reasonable person in fear of being kidnapped or injured or another person being kidnapped or injured. Offense Instruction 30.3, Eleventh Circuit Pattern Jury Instructions. A "true threat" is a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Virginia v. Black, 538 U.S. 343, 359 (2003). A prohibition on true threats, such as § 875(c), "protects individuals from the fear of

---

[2] To transmit something in "interstate commerce" means to send it from a place in one state to a place in another state. This requirement is satisfied when the communication was transmitted or received over the internet. See Offense Instruction 92.2, Eleventh Circuit Pattern Jury Instructions (defining a "facility of interstate commerce" to include a telephone, a cellular phone, and the internet).

[3] Determining whether a threat constitutes a true threat requires both an objective and subjective inquiry. See Elonis v. United States, 575 U.S. 723, 751 (2015); Counterman v. Colorado, 600 U.S. 66, 67 (2023). A true threat must contain an objective threat, meaning a communication that "a reasonable observer would construe as a threat to another." Elonis, 575 U.S. at 751 (quoting United States v. Jeffries, 692 F.3d 473, 478 (6th Cir. 2021)). The Supreme Court, resolving a circuit split, clarified the subjective inquiry in Counterman v. Colorado, 600 U.S. 66 (2023). In Counterman, the Supreme Court held that a recklessness standard – i.e., a showing that the defendant "consciously disregard[ed] a substantial risk that the conduct will cause harm to another" – is the appropriate mens rea in true threat cases. 600 U.S. at 79 (quoting Voisine v. United States, 579 U.S. 686, 691 (2016)). Thus, a true threat case requires, at a minimum, a mental state of recklessness. See also United States v. Franks, 2025 WL 2732412, at *1 (11th Cir. Sept. 25, 2025) (citing Counterman, 600 U.S. at 72.

violence and from the disruption that fear engenders." Id. at 360. This requirement distinguishes criminal conduct from political hyperbole, jokes, or other statements. United States v. Albizar Martinez, 2025 WL 2814881, at *4 (11th Cir. Oct. 3, 2025). A "true threat" can be a conditional threat. See, e.g., United States v. Castillo, 564. F. App'x 500, 501 (11th Cir. 2014); United States v. Callahan, 702 F.2d 964, 965 (11th Cir. 1983); see also United States v. Abbott, 2025 WL 3496169, at *6 (S.D. Fla. Dec. 5, 2025); United States v. Baker, 514 F.Supp.3d 1369, 1381-82 (N.D. Fla. 2021); United States v. Dillard, 795 F.3d 1191, 1200 (10th Cir. 2015). A "true threat of violence does not need to be imminent" to constitute a true threat. Dillard, 795 F.3d at 1200. And "[t]he Government doesn't have to prove that the defendant intended to carry out the threat." Offense Instruction 30.3, Eleventh Circuit Pattern Jury Instructions; see also Black, 538 U.S. at 360 ("speaker need not actually intend to carry out the threat"). The Eleventh Circuit has also recognized that the tense of the language matters. United States v. Fleury, 20 F.4th 1353, 1365 (11th Cir. 2021) (the threat "is worded in the present tense and evidences an intent to intimidate…").

Here, the indictment alleges that while in the Middle District of Florida, the Defendant transmitted true threats to injure and kidnap another person knowing, or in reckless disregard, that such communications would be viewed as a true threat. Doc. 1. The indictment further alleges that the Defendant made each true threat on YouTube.com on specific dates in December 2025. Id. And the indictment also includes a generic description of the true threat alleged, as well as the corresponding unique Comment ID associated with the communication. See id. Therefore, the

indictment goes above and beyond what precedential case law interprets is required. Specifically, the indictment not only tracks the statutory language of § 875(c), provides the approximate date and location where the Defendant committed the alleged offenses, and enables the Defendant to rely upon a judgment under the indictment as a bar against double jeopardy, cf. Bobo, 344 F.3d at 1083; Moore, 954 F.3d at 1332; Steele, 147 F.3d at 1320, it also specifies the particular forum (YouTube) that the Defendant made the communication, as well as the unique Comment ID associated with each true threat alleged, along with a generic description of the communication.

Nevertheless, the Defendant claims that the indictment "fails to state an offense" and "lacks specificity" by citing outdated and non-precedential decisions, many of which conflict with in-circuit rulings or the Eleventh Circuit Pattern Jury Instructions. For instance, the Defendant argues that for a communication to be a "true threat", the United States must plead and prove not only that the Defendant *had the means to act* on his threat, see Doc. 29 at 9 (citing United States v. C.S., 968 F.3d 237, 245 (3d Cir. 2020), but must also plead and prove the Defendant *intended to act imminently*, see id. at 9 (citing United States v. Kelner, 534 F.2d 1020 (2d Cir. 1976). However, that is not the law according to the plain language of § 875(c), the Eleventh Circuit Pattern Jury Instructions, or other relevant case law, see supra Black, Castillo, Callahan, and Offense Instruction 30.3.

Additionally, the Defendant argues the indictment fails because Muslims, immigrants, "American blacks", and "people from India" do not qualify as a "person of another" under 18 U.S.C. § 875(c). See Doc. 29 at 8-9. What the Defendant intends

8

to convey is unclear and is ripe to be misconstrued but, regardless, his own footnote, see Doc. 29 at 9 n.8, sheds light on how expansive the Defendant's target is: there are millions of Muslims, immigrants, "American blacks", and people from India located in the United States. Therefore, because it is apparent that the Defendant himself is not also simultaneously the millions of Muslims, immigrants, "American blacks", and people from India whom he directed his communications toward, those other persons are other persons within the meaning of § 875(c). To the extent the Defendant is arguing that a particular victim must have actually and subjectively interpreted the Defendant's threat as a true threat is contrary to case law and the Eleventh Circuit Pattern Jury Instructions. Instead, a true threat need only contain a communication that "a reasonable observer would construe as a threat to another." See infra footnote 3 (citing Elonis, 575 U.S. at 751 (quoting United States v. Jeffries, 692 F.3d 473, 478 (6th Cir. 2021)).

Simply put, just as normally occurs for the more routine illegal re-entry case or drug trafficking offense, the United States did not allege in the indictment every manner and all circumstances involved in the offense. Instead, the indictment alleges a general description of each of the nineteen (19) charged true threats made by the Defendant, along with other pertinent identifications, in order for the United States to provide notice to the Defendant and comply with the Federal Rules of Criminal Procedure. Taking those facts alleged in the indictment to be true for purposes of responding to the Defendant's motion and under § 875(c), the indictment permits the fact finder to consider and decide the essential allegation: that when the speaker made

9

the statement to kill or kidnap another person, did the speaker "really mean it" or did the speaker know – or should he have known – that another person would believe that the speaker really meant it?

The United States posits, for the reasons already identified and explained above, it is certainly within the realm of plausibility that a person would view the communications posted by the Defendant on YouTube and interpret them as true threats to kidnap or injure "another person" – that is, any Muslim, immigrant, "American black", or person "from India" in the United States to whom the Defendant's threatening communications were directed toward – particularly, in light of the context: they were repeated, lengthy, and descriptive.[4] Therefore, this Court should reject the Defendant's claim as a basis to dismiss the indictment that "none of these alleged communications could be deemed a true threat by a reasonable juror." Doc. 29 at 2. That is because the indictment includes what is required for the fact finder to make the relevant determination.

As another illustration, just as a Muslim, an immigrant, an "American black", an Indian, or any other shopper located inside of Publix may choose to walk down some other aisle (as an external expression of the true threat they perceive) when there is a person in the immediate aisle ranting about how they intend to kidnap or kill Muslims (or immigrants, or "American blacks", etc.) in detailed, graphic ways, so too

---

[4] In essence, the Defendant repeatedly posted on YouTube that he and other "veterans" are "actively making plans" to commit "the most horrific genocide the worlds ever seen"; that they intend to do so by "loading them on busses" and "rip[ping] you[r] child out of your arms put[ting] a bullet in its head then put[ting] one through yours … [then] send[ing] you through the wood chippers…"; that he is "already saving gas for the wood chipper"; and similar sentiments. See Doc. 1.

may such a person interpret such speech they encounter on YouTube as a true threat. Neither forum is a "public forum", cf. Doc. 29 at 8 n.7, which in any event is an irrelevant distraction to the inquiry of whether any person, including the target of the speech, may interpret a given communication as a true threat. And whether any person, including the target of the speech, can essentially remove themself from the vicinity of the communication (by walking down another aisle at Publix or 'terminat[ing] the [YouTube] posting at will', cf. id.) is equally irrelevant to whether one would perceive the communication as a true threat. In either scenario, when another person overhears or sees the communication, he or she is operating with limited information. He or she does not know whether the threat is conditional, or imminent, or whether the speaker intends to carry out the threat. And it is entirely plausible that this lack of information (i.e., the unknown) heightens the impression of fear and perception that such threat is a true threat. And a fact finder may consider these or other examples, and their own experiences, in determining whether the Defendant knowingly issued the statements on YouTube in knowing or reckless disregard of the fact that some other person would construe his communications as a threat to another person. As the Supreme Court put it more than 20 years ago, because a true threat evinces an intent to commit an act of unlawful violence to a group of individuals, prohibitions on such threats protect individuals from fear of violence and from the disruption that fear engenders. Black, 538 U.S. at 359-60. So when the Defendant makes threats to kill and kidnap Muslims, immigrants, "American blacks", and people from India, as alleged in the indictment, Doc. 17, it is not protected speech

11

and a fact finder is free to consider whether it is a true threat as described in the indictment.

The Defendant's remaining contention is that the indictment is unconstitutionally vague as applied to him because the allegations contained in the indictment do not put him on notice that his alleged speech was unlawful under § 875(c). See Doc. 29 at 13. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that the government "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015). The animating principle of the vagueness doctrine's fair-notice prong "is that no [person] shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954). A criminal statute is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair warning, or authorizes arbitrary and discriminatory enforcement." United States v. Lebowitz, 676 F.3d 1000, 1012 (11th Cir. 2012). But the Constitution's prohibition of vague criminal laws does not mean that statutes must "define every factual situation that may arise." Id. Nor does "the mere fact that close cases can be envisioned" under a statute "render [the] statute vague." United States v. Williams, 553 U.S. 285, 305 (2008).

Here, the indictment (1) tracks the language of § 875(c); (2) identifies that the

12

Defendant knowingly transmitted certain communications containing a true threat to injure and kidnap other persons, (3) describes the operable mens rea required; (4) qualifies each allegation of a threat as a "true threat"; (5) identifies the date and unique Comment ID associated with each true threat alleged; and, (6) provides a generic description of the true threat alleged, for instance:

(1)     Count 1 – Threat to kill and eradicate Muslims off the face of the earth…

(2)     Count 2 – Threat to slaughter, eradicate, and kill every Muslim man, woman and child…

(3)     Count 3 – Threat to kill and genocide all Muslim men, women, and children…

(4)     Count 4 – Threat to kill and genocide Muslims in their homes…

(5)     Count 5 – Threat to kill and genocide all Muslims…

(6)     Count 6 – Threat to slaughter and kill all Muslims…

(7)     Count 7 – Threat to kill all Muslim men, women, and children…

(8)     Count 8 – Threat to kill immigrants, Muslims, "American blacks", and "people from India"…

(9)     Count 9 – Threat to genocide and slaughter every Muslim…

(10)    Count 10 – Threat to slaughter and genocide Muslims and politicians…

(11)    Count 11 – Threat to genocide, kill, and exterminate Muslim men, women and children…

(12)    Count 12 – Threat to kidnap and kill entire towns of Muslim men, women, and children by loading them on busses to a location where they will

be shot in the head and sent through a wood chipper…

(13)     Count 13 – Threat to genocide and kill every Muslim in America

(14)     Count 14 – Threat to slaughter and kill illegal immigrants…

(15)     Count 15 – Threat to kill and genocide Muslims on US soil…

(16)     Count 16 – Threat to kill and eradicate Muslims…

(17)     Count 17 – Threat to kill any Muslim found on US soil…

(18)     Count 18 – Threat to kidnap and kill Muslims by loading them onto busses, transporting them to another location, and shooting them in the head, and sending them through woodchippers…

(19)     Count 19 – Threat to kidnap and kill Muslims…

Doc. 17 at 1-3. As such, there is a sufficient amount of information included in the indictment to place the Defendant on notice of the allegations and how such communications are unlawful because of each communications' expression of a true threat in the form of an intent to kidnap or kill certain segments of the population, which is forbidden by 18 U.S.C. § 875(c). A person of common intellect who reads 18 U.S.C. § 875(c) would know that whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another would be in violation of federal law. Section 875(c) is not unconstitutionally vague merely because it does not set forth in detail the precise contours of each statement that is forbidden under the statute, which describe an intent to kidnap or injure another person. Taking the Defendant's logic at face value (i.e., requiring § 875(c) to list out every statement that is forbidden under the law) would

most certainly render the statute unconstitutional. It is respectfully submitted that the universe of ways in which one may violate 18 U.S.C. § 875(c) is dwarfed only by the limitless number of ways one could describe how or the details by which they intend to kidnap or injure any other person. But in any event, just because the Defendant may not have subjectively realized it was unlawful to make communications where he repeatedly describes in explicit, graphic details his intent to kidnap and kill Muslims, immigrants, "American blacks", and "people from India," is irrelevant because "[a] defendant's ignorance of the law is not a defense." United States v. Lebowitz, 676 F.3d 1000, 1012 (11th Cir. 2012).

Accordingly, the indictment sufficiently places the Defendant on notice that his speech was unlawful under 18 U.S.C. § 875(c).

## III.   CONCLUSION

Accordingly, for all of the reasons stated herein, the Court should deny the

Defendant's Motion to Dismiss Indictment, see Doc. 29.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:   /s/ Matthew Redavid
       Matthew Redavid
       Assistant United States Attorney
       Florida Bar No. 124225
       2110 First Street, Suite 3-137
       Ft. Myers, Florida 33901
       Telephone:   (239) 461-2200
       Facsimile:    (239) 461-2219
       E-mail: Matthew.Redavid@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ *Matthew Redavid*
Matthew Redavid
Assistant United States Attorney
Florida Bar No.: 124225
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone:   (239) 461-2200
Facsimile:    (239) 461-2219
E-mail: Matthew.Redavid@usdoj.gov

17