UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO.: 2:26-cr-24-SPC-DNF

JOSEPH ERIC DEMEO

_____

**OPINION AND ORDER**

Before the Court is Defendant Joseph Eric Demeo's Motion to Dismiss the Indictment (Doc. 29) and the Government's response (Doc. 33). For the reasons below, the Court denies the motion.

Between December 15 and 27, 2025, Defendant commented on twenty-two different YouTube videos with death threats to various ethnic groups, including Muslims, "American blacks," immigrants, and "people from India." (Docs. 1, 17). On December 29, 2025, Google notified the FBI of the threats. Three days later, the Government charged Defendant by criminal complaint with violating 18 U.S.C. § 875(c), which prohibits the transmission, in interstate or foreign commerce, of any communication containing any threat to injure the person of another. (Doc. 1). On January 21, 2026, a grand jury indicted Defendant on nineteen counts of violating § 875(c) corresponding to nineteen separate comments. (Doc. 17).

The indictment largely tracks the language of 18 U.S.C. § 875(c).  (Doc. 17).  It charges all counts together and provides that Defendant:

> did knowingly transmit in interstate commerce a communication containing a true threat to injure and kidnap the person of another with the intent to issue a threat, and knowing and in reckless disregard of the fact that such communications would be viewed as a threat, to wit: the following statements on www.Youtube.com . . .

(*Id.*).  The indictment then includes a chart listing the count, a summary of the communication, the communication date, and the YouTube comment ID number.  The communications are listed for each count as follows:

1. Threat to kill and eradicate Muslims off the face of the earth
2. Threat to slaughter, eradicate, and kill every Muslim man, woman, and child
3. Threat to kill and genocide all Muslim men, women, and children
4. Threat to kill and genocide Muslims in their homes
5. Threat to kill and genocide all Muslims
6. Threat to slaughter and kill all Muslims
7. Threat to kill all Muslim men, women, and children
8. Threat to kill immigrants, Muslims, "American blacks," and "people from India"
9. Threat to genocide and slaughter every Muslim
10. Threat to slaughter and genocide Muslims and politicians
11. Threat to genocide, kill, and exterminate Muslim men, women, and children
12. Threat to kidnap and kill entire towns of Muslim men, women, and children by loading them on buses to a location where they will be shot in the head and sent through a woodchipper
13. Threat to genocide and kill every Muslim in America
14. Threat to slaughter and kill illegal immigrants
15. Threat to kill and genocide Muslims on US soil
16. Threat to kill and eradicate Muslims
17. Threat to kill any Muslim found on US soil

     18.    Threat to kidnap and kill Muslims by loading them onto buses, transporting them to another location, and shooting them in the head, and sending them through woodchippers

     19.    Threat to kidnap and kill Muslims

(*Id.*).

Defendant moves to dismiss the indictment under Federal Rules of Criminal Procedure 12(b)(3)(B)(iii) and (v), arguing the indictment fails to state an offense, lacks specificity, and is unconstitutionally vague as applied.[1] (Doc. 29). He primarily argues that his statements were not "true threats," so the indictment does not establish a violation under § 875(c), and his statements are protected by the First Amendment. (*Id.*). In response, the Government argues the indictment satisfies Rule 7 and the Sixth Amendment, and whether his comments were "true threats" is a jury consideration. (Doc. 33).

When reviewing an indictment on a criminal defendant's motion to dismiss, the Court is confined to the four corners of the indictment itself. *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes."); *United States v. Critzer*, 951 F.2d 306, 306–07 (11th

---

[1] Although Defendant argues the *indictment* is unconstitutionally vague—a Sixth Amendment concern—he cites authority addressing unconstitutionally vague *statutes*—a Fifth Amendment due process concern. (Doc. 29 at 13). Out of an abundance of caution, the Court presumes he challenges both the indictment and § 875(c) as unconstitutionally vague.

Cir. 1992) ("The sufficiency of an indictment is determined from its face."). As such, dismissal is appropriate only "where there is an infirmity of law in the prosecution[.]" *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citation omitted). Dismissal cannot be premised on "a determination of facts that should have been developed at trial." *Id.* (citation omitted). "The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government." *United States v. Rodriguez*, 635 F. Supp. 3d 1351, 1354–55 (S.D. Fla. 2022).

An indictment need not be elaborate, detailed, or complex. Rather, the Rules require only "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). And an indictment comports with the Sixth Amendment so long as it (1) apprises the defendant of the charged conduct, and (2) permits him to avoid double jeopardy in any other proceeding against him. *See Russell v. United States*, 369 U.S. 749, 763–64 (1962) (explaining the "protections which an indictment is intended to guarantee"); *United States v. Bobo*, 344 F.2d 1076, 1083 (11th Cir. 2003) ("For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." (cleaned up)); *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983) ("To pass constitutional muster, an indictment must be sufficiently specific to inform the defendant of the

4

charge against him and to enable him to plead double jeopardy in any future prosecutions for the same offense."). An indictment satisfies this threshold by "track[ing] the wording of the statute, as long as the language sets forth the essential elements of the crime." *Yonn*, 702. F.2d at 1348 (citation omitted).

Turning to the merits, the Court first outlines the requisite elements. Section 875(c) provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."  Thus, a violation of § 875(c) has two elements: (1) "the Defendant knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and (2) the Defendant sent the message with the intent to communicate a true threat or with knowledge that it would be viewed as a true threat." Pattern Crim. Jury Instr. 11th Cir. O30.3 (2025) (cleaned up).  The term "true threat" is defined as "a serious threat—not idle talk, a careless remark, or something said jokingly— that is made under circumstances that would place a reasonable person in fear of being injured."[2]  *Id.* (cleaned up); *see also Black*, 538 U.S. at 359 ("'True

---

[2] The requirement that the threat be "true" derives from First Amendment concerns.  "[A] statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind.  What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707 (1969) (interpreting a statute criminalizing threats to the president).  So "true threats," which are distinguishable from constitutionally protected speech, are subject to

threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.").

With this standard in mind, the indictment satisfies Rule 7 and the Sixth Amendment. On its face, the indictment cites the correct statute and properly lays out the elements. It also describes with sufficient factual detail the nineteen comments giving rise to the charges. The indictment describes each comments' substance (*i.e.*, Defendant's threats to kill Muslims, "black Americans," immigrants, and "people from India"), the date the comment was posted, and the corresponding comment ID numbers. With this information— particularly the comment ID numbers—the comments are easily identifiable such that Defendant can plead double jeopardy in a future prosecution for this same offense, and it apprises him of the charged conduct. *See United States v. Abbott*, No. 24-CR-20098, 2025 WL 1744360, at *2 (S.D. Fla. June 24, 2025) (denying motion to dismiss indictment because "the indictment tracks the language of Section 875(c), recites the email which the Government argues violates Section 875(c), and states when and where the email was sent"); *United States v. Hussaini*, No. 19-60387-CR, 2022 WL 138474, at *6 (S.D. Fla.

---

government restriction. *See id.* at 708; *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) ("[T]he First Amendment also permits a State to ban a 'true threat.'").

Jan. 14, 2022) (finding an indictment almost identical to the one here satisfied Rule 7 and the Sixth Amendment).

Defendant argues that the indictment lacks specificity because it omits any context or circumstances surrounding his comments, without which the allegations do not suggest his comments amount to true threats. On that score, he maintains his comments are not true threats (as a matter of law). He argues no reasonable person would view the alleged comments as a threat because (1) they do not indicate when or where he would undertake the threatened action or that he has the means to act on it, (2) the comments were directed at large groups constituting millions of people, and (3) the comments were posted publicly on a YouTube page rather than sent directly to anyone. (Doc. 29 at 8–11). This argument fails for several reasons.

The indictment need not allege context so long as a reasonable person could interpret the alleged comments as threatening. And indeed, a reasonable person could interpret Defendant's comments as threatening, in which he expresses his intent to kill, commit genocide, and slaughter various ethnic groups. Defendant's arguments to the contrary are a jury consideration. *See United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) ("[W]hether a communication is a threat is a question of fact to be left to the jury." (citation omitted)); *United States v. Biddle*, No. 6:25-CR-162-RBD-DCI, 2025 WL 2936417, at *2 (M.D. Fla. Oct. 9, 2025) ("Because the Indictment tracks the

language of the statute and Defendant's statement could potentially be a true threat, dismissal is not appropriate."); *Abbott*, 2025 WL 1744360, at *2 (denying motion to dismiss indictment because the indictment satisfied Rule 7, and "[w]hether the alleged conduct qualifies as a 'true threat' is a factual question, which is not properly decided by the Court on a motion to dismiss the indictment"); *United States v. Giancola*, 2:25-cr-238-KCD-DNF, Doc. 36 at 5–6 (M.D. Fla. Feb. 15, 2026) (explaining "[d]ismissal is appropriate only in the rare case where a statement is so clearly non-threatening that no reasonable jury could find otherwise").

To be sure, Defendant's contextual considerations do not alter the analysis. Although he notes that the alleged comments do not provide the when and where of the threatened conduct, the Government need not prove the threats were imminent. *See United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015) ("Imminence may contribute to a finding that a communication constitutes a true threat, but it is not a required element."); *United States v. Vaksman*, 472 F. App'x 447, 449 (9th Cir. 2012) (rejecting the defendant's argument that his email was not objectively a true threat because it contained no threat of imminent action). Nor does it matter that his comments targeted various ethnic groups comprising millions of people. *See Hussaini*, 2022 WL 138474, at *8 (S.D. Fla. Jan. 14, 2022) (rejecting argument that the communications were not true threats because "blacks and Christians" are not

discrete and identifiable groups).  And although his comments were posted to YouTube videos rather than directed at a particular person, "a true threat does not need to be communicated directly to the intended victim." *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019) (addressing threats posted publicly on Facebook to kill broad groups, such as college students, rich people, people walking their dogs, and vulnerable individuals).  So Defendant's arguments are best suited for a jury.

Defendant also argues that § 875(c) is unconstitutionally vague as applied because it does not put him on notice that his speech was unlawful. But this argument has been rejected by other courts.  *See, e.g.*, *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (finding § 875(c) "is not impermissibly vague" because "[a]n ordinary citizen can understand what is meant by the terms 'threat to kidnap' and 'threat to injure'" and "provides sufficient standards to allow enforcement in a non-arbitrary manner")*; Abbott*, 2025 WL 1744360, at *3 (rejecting vagueness challenge to § 875(c) because "'numerous' cases provide clear guidance as to the constitutionally-permissible scope of Section 875(c), thereby undermining Defendant's vagueness argument").  The Court likewise rejects it here.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss the Indictment (Doc. 29) is **DENIED**.

9

**DONE AND ORDERED** in Fort Myers, Florida on April 21, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record

10